725 F.2d 880
 10 Collier Bankr.Cas.2d 574
 In re BECK INDUSTRIES, INC., Debtor.
Manuel F. ROTHBERG, Plaintiff-Appellant,
v.
Stephen KIRSCHENBAUM, Trustee of Beck Industries, Inc., and
W & J Sloane of Beverly Hills, Inc., Defendants,
Stephen Kirschenbaum, Trustee of Beck Industries, Inc.,
Defendant-Appellee.
 No. 17, Docket 83-5014.
 United States Court of Appeals,
Second Circuit.
 Argued Sept. 13, 1983.
Decided Jan. 16, 1984.
 
 Robert J. Rosenberg, New York City (Moses & Singer, New York City), for plaintiff-appellant.
 Lonn A. Trost, New York City (Shea & Gould, New York City), for defendant-appellee.
 Before FEINBERG, Chief Judge, FRIENDLY and NEWMAN, Circuit Judges.
 FRIENDLY, Circuit Judge:
 
 
 1
 "I do not use the term 'jurisdiction' ", Justice Frankfurter once observed, "because it is a verbal coat of too many colors." United States v. L.A. Tucker Truck Lines, Inc., 344 U.S. 33, 39, 73 S.Ct. 67, 70, 97 L.Ed. 54 (1952) (dissenting opinion). If the term is used, as it may have to be, this should be done with a precision unhappily not practiced here. It is thus necessary for us to make a fresh analysis.
 
 
 2
 The Proceedings in the Bankruptcy Court and the District Court
 
 
 3
 Beck Industries, Inc. ("Beck"), has been in reorganization proceedings under Chapter X of the Bankruptcy Act of 1898 in the District Court for the Southern District of New York since May 27, 1971.[1] Beck owned all the stock of a non-filing subsidiary, W & J Sloane of Beverly Hills, Inc. ("Sloane"), a Delaware corporation, which was engaged in the retail sale of furniture in California. Manuel F. Rothberg had been employed by Sloane since 1960 and had become its president. On February 14, 1979, the trustee addressed a letter to Rothberg "to confirm our understanding with regard to the continued employment by [sic ] you as the President of W & J Sloane." Effective January 1, 1979, Rothberg was to receive an annual salary of $125,000, continuation of existing fringe benefits, and a bonus of 10% of Sloane's net profits in excess of $500,000 per annum. The letter confirmed "that there is no contract of employment between you and the company, your employment being at will." Rothberg accepted this.
 
 
 4
 On December 24, 1981, upon the application of Stephen Kirschenbaum, the current reorganization trustee of Beck, Bankruptcy Judge Ryan signed an order directing interested parties to show cause why the bankruptcy court should not enter an order authorizing the trustee to take such corporate action as might be necessary to cause Sloane to sell its interest in real property, fixtures and equipment, and the name "W & J Sloane" for $3,000,000 andto conduct a liquidation sale on the Premises upon such terms and conditions as the Trustee believes to be in the best interests of Sloane, Beck, the estate herein and the creditors hereof, as more fully set forth in the Application.
 
 
 5
 The application stated that in conjunction with the contemplated sale it would become necessary and appropriate to liquidate Sloane's inventory; that the trustee believed it would be in the best interests of the estate and its creditors if the liquidation were to be conducted under the supervision and control of Rothberg; and that the trustee proposed to pay Rothberg for his services in connection with the liquidation of the inventory 10% of the net profits. Use of the word "net" was an error by counsel for the trustee; it was later corrected to read 10% of the gross proceeds. After a hearing the bankruptcy judge, on February 19, 1982, entered an order, later vacated and superseded by an order dated April 12, 1982, reading as follows:
 
 
 6
 [T]hat the Trustee be and he hereby is authorized and empowered to take such corporate action as may be necessary or appropriate to cause Sloane to liquidate its inventory on the Premises or otherwise, upon such terms and conditions as the Trustee believes to be in the best interests of Sloane, Beck and the estate herein and the creditors hereof.
 
 
 7
 The order made no express reference to the employment of Rothberg to conduct the liquidation or its terms, and the arrangements were never formalized.
 
 
 8
 Even before the entry of the superseding order, the amicable relations between the trustee and Rothberg had come to an end. On March 26, 1982, the trustee of the Beck estate, owner of all the stock of Sloane, elected a new board of directors which removed Rothberg as president. On the same day Sloane instituted an action in the Superior Court of California, Los Angeles County, against Rothberg, MFR Corp. (a California corporation wholly owned by Rothberg), and 20 persons described as "DOES". The complaint, as amended on April 15, 1982, alleged that between January 1982 and March 26, 1982, Rothberg had misappropriated some $830,000 of Sloane's funds and had put some or all of them into MFR Corp. Neither the initial nor an amended complaint said how the misappropriation had occurred. However, an affidavit of the trustee in the adversary proceeding in the bankruptcy court discussed below claimed that Rothberg had purchased millions of dollars of new inventory and that after a sale of this for some $8,000,000, Sloane had been left with inventory costing $2,215,000, about what it had started with, which remained to be liquidated. At the hearing before the bankruptcy court recounted below, counsel for the trustee claimed that discovery had disclosed that Rothberg and his wife and children purchased in excess of $35,000 of inventory during the liquidation and directed that it be written off, that "one-half to a million dollars of union dues ... were not negotiated down", and that $210,000 of "other family receivables" had been written off.
 
 
 9
 On May 3, 1982, Rothberg initiated an adversary proceeding in the bankruptcy court pursuant to Bankruptcy Rules 701(5) and 10-701(4) against the trustee and Sloane. The complaint began by reciting the proceedings in the bankruptcy court outlined above, the recital being preceded by an allegation that
 
 
 10
 [i]n December, 1981 Rothberg entered into a contract with the Trustee wherein it was agreed that Rothberg would direct, manage and operate the liquidation of Sloane and would receive for his services 10% of the gross sales.
 
 
 11
 It went on to say that Rothberg had recovered over $7,000,000 in gross sales from the liquidation of Sloane and had received $700,000 for his services from its controller. The complaint then alleged Rothberg's dismissal, the institution of the California suit, and the fact that the judge in charge of the latter had entered an order temporarily freezing the $700,000 which Rothberg had received.[2] The complaint requested various forms of relief; an injunction against the trustee and Sloane from proceeding with the California action; orders authorizing Rothberg to retain 10% of the gross proceeds from the liquidation and to sell the remaining inventory of Sloane and receive 10% of the gross proceeds; an order interpreting the court's orders of February 19 and April 12, 1982; and
 
 
 12
 [i]n the alternative, and in the event this Court declines to enjoin the Trustee and Sloane from proceeding with the California action, ... an Order declaring that any order entered in the California action shall be binding upon all parties thereto, including the Trustee and shall bar any further action by the Trustee or Sloane against plaintiff Rothberg or MFR Corp. on account of the subject matter of the California action.
 
 
 13
 Upon an affidavit of Robert J. Rosenberg, Rothberg's New York attorney, reciting substantially what we have stated, the bankruptcy court issued an order requiring the trustee, Sloane and all other parties in interest to show cause why the trustee and Sloane should not be temporarily enjoined from prosecuting the California action and directed to take all necessary and appropriate action to dissolve the temporary injunction that had been issued therein.
 
 
 14
 The trustee submitted an affidavit in opposition. This contained the allegation with respect to Rothberg's inflating the Sloane inventory mentioned above, and cited cases alleged to show that the bankruptcy court lacked authority to enjoin a suit by a solvent subsidiary of the estate. Rosenberg submitted a reply affidavit. This stated that
 
 
 15
 [t]he crux of this matter is that the Trustee insists on retaining the ability to litigate the issues relating to Sloane's liquidation in two forums. Plaintiff has offered to discontinue this action on the condition that the Trustee stipulate that he will submit to the jurisdiction of the California court, that plaintiff can assert in the California action any claims he has against the Trustee relating to the liquidation of Sloane and that the Trustee will be bound by any order or judgment entered in the California action. The Trustee, however, has flatly refused Mr. Rothberg's offer.
 
 
 16
 It also averred that the trustee caused Sloane to commence the California action and was the real party in interest therein. Annexed to the affidavit was a declaration of Rothberg's supporting the allegation that he was a responsible businessman with assets in excess of $2,000,000.
 
 
 17
 The bankruptcy judge held a hearing on May 14, 1982. In attendance were Rosenberg; Heyman, a California lawyer for Rothberg; and Trost, attorney for the trustee. The discussion went considerably beyond the question of the relief sought in the order to show cause. Rosenberg asserted that the bringing of the California action was "an injury to this Court's jurisdiction". However, he had no objection to proceeding in California; his problem was that "the trustee wants more than one bite of the apple." More elaborately,
 
 
 18
 [h]e [the trustee] wants to say that he is not subject to jurisdiction in California. If he doesn't like the result, he's going to come back to this Court and say it was null and void; he's going to say that no cross-claims or counterclaims can be asserted against him because he is not involved in the proceeding....
 
 
 19
 He discussed the refusal by counsel for the trustee to stipulate that the trustee would be subject to counterclaims in the California action. After extensive and rather aimless colloquy in which counsel for the trustee adverted, among many other things, to the California court's lack of personal jurisdiction over the trustee, the court inquired whether it could not "deflect its jurisdiction to a state court". Rosenberg said, "Nothing would please me more." Counsel for the trustee made a variety of responses, saying at one point
 
 
 20
 [i]f they wish to bring on a third-party action or bring the trustee in any way which is appropriate under the statutes of California, let them do it.
 
 Ultimately the judge asked:
 
 21
 Why should not Mr. Kirschenbaum wearing the cap of trustee in this case be directed to participate in that litigation to the extent possible in the interest of minimizing duplicative judicial proceedings?
 
 After more colloquy, Rosenberg said that
 
 22
 [i]n Mr. Heyman's briefcase there are counterclaims and cross-claims against Mr. Kirschenbaum as trustee as well as Sloane's. We will serve it on Mr. Trost at this very moment if he will accept service and consent to jurisdiction.
 
 
 23
 Trost declined, pointing out where the trustee could be served in New York. There was more colloquy, with Rosenberg asserting that the trustee had become president of Sloane, Trost denying it, and the trustee, who was telephoned, saying that he didn't know whether he had or hadn't. Trost showed no interest in looking at the proposed counterclaims. After pages of further discussion, Heyman stated that Rothberg "will cross-claim against Mr. Kirschenbaum as trustee for the remainder due under the contract that he made with Mr. Kirschenbaum." Finally, after eliciting that nobody wanted an evidentiary hearing, the judge said:
 
 
 24
 All right, on the entire record before me I think it entirely proper for this Court to direct Mr. Kirschenbaum as reorganization trustee to appear in the California litigation so that all of the rights and obligations between and among the parties can be resolved in one forum.
 
 
 25
 Rothberg filed his cross-complaint in the California court even before the order was signed. This must have come as something of a shock to Trost. It named as cross-defendants Sloane, Kirschenbaum, in his official capacity as Trustee in Reorganization of Beck, Trost, California counsel "for ... Sloane and the Trustee", and "DOES"--going the complaint 50% better by increasing the number to 30. It alleged that each of the cross-defendants other than the trustee acted as his agent and that each cross-defendant acted "in concert with, and as part and parcel of a conspiracy between, each of the other cross-defendants." It recited the facts and proceedings much as heretofore described, adding the piquant allegation that on or about March 26, 1982, the cross-defendants represented that they had the authority to fire Rothberg from his position with Sloane and to order and force him to leave the premises, with the trustee telling him that he would "leave in an ambulance, leave in a wheelchair, or leave with a cop." Instead of asking merely for the $700,000 allegedly due to Rothberg for the liquidation that had occurred and the added sum that would have been due him as 10% of the unsold balance, estimated as another $300,000, and attorneys' fees, the cross-claim asserted a second cause of action for $10,000,000 in punitive damages for "willful, fraudulent, oppressive and malicious" actions in defrauding Rothberg and a third cause of action in compensatory damages for wrongful discharge in connection with the employment agreement of February 14, 1979, plus punitive damages of $10,000,000.
 
 
 26
 Receipt of a copy of this from Sloane's California counsel led Trost to send a hand-delivered letter to the bankruptcy judge dated May 24, 1982, enclosing a copy of the cross-complaint. The letter urged it was essential for the judge "to consider the counterclaims that are alleged to be authorized pursuant to your proposed order." Trost reiterated his "opposition to the proposed entry of any order which directs the Trustee to participate in the California action," but did not seek further argument. The record does not disclose whether the bankruptcy judge saw or considered the letter, which bears a file stamp of June 1, 1982, before he signed his order of May 28, 1982. This contained five ordering paragraphs which we set forth in the margin.[3]
 
 
 27
 The trustee appealed to the District Court for the Southern District of New York. Judge Cannella directed that the order of the bankruptcy judge be reversed and vacated.
 
 
 28
 The district judge began his discussion by stating that
 
 
 29
 [a]lthough the Bankruptcy Act gives a bankruptcy court exclusive jurisdiction over "the debtor and his property, wherever located," 11 U.S.C. Sec. 111 (repealed), a bankruptcy court does not have jurisdiction over suits concerning property that is not part of the debtor's estate, see Matter of Stanndco Developers, Inc., 534 F.2d 1050, 1052-53 (2d Cir.1976); see also In re Shirley Duke Associates, 611 F.2d 15, 18 (2d Cir.1979). In addition, it is settled that the debtor's ownership of all the outstanding stock of a non-filing subsidiary corporation does not make the subsidiary part of the debtor's estate. See In re Beck Industries, Inc., 479 F.2d 410, 415 (2d Cir.), cert. denied sub. nom. Trustees of Beck Industries, Inc. v. Feldman, 414 U.S. 858, 94 S.Ct. 163, 38 L.Ed.2d 108 (1973).
 
 
 30
 He characterized Rothberg's position as being, first, that the bankruptcy court had jurisdiction over the trustee and therefore had authority to order him to appear in the California action and, second, that the bankruptcy court had subject-matter jurisdiction over the California action and accordingly had authority to "deflect" that jurisdiction to the California court in the interest of judicial economy. The district court disagreed with both contentions and accordingly reversed the order of the bankruptcy judge. Rothberg has appealed.
 
 DISCUSSION
 I.
 
 31
 The assertion by Rothberg's counsel before the bankruptcy judge that the bringing of the California action was "an injury" to the jurisdiction of the bankruptcy court was entirely specious. Sloane was not a bankrupt but a solvent nonfiling subsidiary. It had the same right to hail Rothberg before the California court as a non-affiliated corporation would have had, and the jurisdiction of the bankruptcy court was in no way impaired by its doing so.
 
 
 32
 Many of the horribles of relitigation paraded by Rothberg's counsel before the bankruptcy judge were equally specious. Even if we assume that Rothberg's employment contract was between him and the trustee rather than between him and Sloane, a judgment against Sloane in its California action would normally preclude the trustee from relitigating issues there determined in Rothberg's favor. This follows from the familiar principle stated in Sec. 39 of the Restatement (Second) of Judgments (1980) that
 
 
 33
 [a] person who is not a party to an action but who controls or substantially participates in the control of the presentation on behalf of a party is bound by the determination of issues decided as though he were a party.
 
 
 34
 See id., comment b, illustration 4, and Sparks Nugget, Inc. v. Commissioner, 458 F.2d 631, 638-39 (9 Cir.1972), cert. denied, 410 U.S. 928, 93 S.Ct. 1362, 35 L.Ed.2d 589 (1973), on which it is based. It is fairly clear, despite the trustee's tergiversations in his California deposition,[4] that he is controlling Sloane in the California action and that counsel for Sloane are taking their orders from him, whether he has become president of Sloane or not. Cf. Kreager v. General Electric Co., 497 F.2d 468 (2 Cir.), cert. denied, 419 U.S. 861, 95 S.Ct. 111, 42 L.Ed.2d 95 (1974) (control by sole shareholder). Beyond that, Sec. 59 of the Restatement (Second) of Judgments, while reaffirming the general proposition that a judgment in an action to which a corporation is a party has no preclusive effects on an officer, director or stockholder, makes an exception as follows:
 
 
 35
 (3) If the corporation is closely held, in that one or a few persons hold substantially the entire ownership in it, the judgment in an action by or against the corporation or the holder of ownership in it is conclusive upon the other of them as to issues determined therein as follows:
 
 
 36
 (a) The judgment in an action by or against the corporation is conclusive upon the holder of its ownership if he actively participated in the action on behalf of the corporation, unless his interests and those of the corporation are so different that he should have opportunity to relitigate the issue....
 
 
 37
 See also id. comment e. Under general principles of the law of judgments, there would normally be no need for any direction to the trustee to appear in Sloane's California action in order to prevent him from reasserting in the bankruptcy court or elsewhere a claim which Sloane had lost against Rothberg in that action or from relitigating issues that had been decided in Rothberg's favor in a successful defense against Sloane's claim. The case for directing the trustee to appear in the California action in his official capacity--and no request was or could properly have been made for an order directing him to appear in any other, see Ziegler v. Pitney, 139 F.2d 595 (2 Cir.1943) (A.N. Hand, J.)--thus rests on the desirability of having any claims of Rothberg against the trustee determined in the same forum that will be obliged to decide Sloane's claims against Rothberg and Rothberg's against Sloane.
 
 
 38
 With the issue thus identified, the first question requiring decision is whether the California court would have jurisdiction to entertain a claim against the trustee in his official capacity--and, we repeat, no other was asserted--in the absence of leave from the bankruptcy court. It was held in Barton v. Barbour, 104 U.S. 126, 26 L.Ed. 672 (1881), that a suit could not be maintained against a receiver for an act in his official capacity without leave of the court that had appointed him, and Vass v. Conron Bros., 59 F.2d 969 (2 Cir.1932) (L. Hand, J.), applied this rule to a trustee in bankruptcy. The Barton v. Barbour doctrine, however, has long been subject to a statutory exception, now 28 U.S.C. Sec. 959(a), which provides that "[t]rustees, receivers or managers of any property, including debtors in possession, may be sued, without leave of the court appointing them, with respect to any of their acts or transactions in carrying on business connected with such property." The issue thus arises whether Kirschenbaum's acts in carrying out the liquidation of Sloane were "acts or transactions in carrying on business connected" with the property of the Beck estate.
 
 
 39
 The question is not readily answered. In a practical sense the liquidation of Sloane, with the objective of procuring a distribution to the Beck estate, could well be viewed as business connected with Beck's property, to wit, the shares of Sloane. However, this court has given Sec. 959(a) a rather narrow construction. Vass v. Conron Bros., supra, held the test was not met where the bankrupts, dealers in refrigerated products, had leased part of their cold storage plant to a tenant who sued the trustee for his breach of the bankrupt's obligation to refrigerate the leased premises. Relying in part on In re Kalb & Berger Mfg. Co., 165 F. 895 (2 Cir.1908), Judge L. Hand said that
 
 
 40
 [m]erely to hold matters in statu quo; to mark time, as it were; to do only what is necessary to hold the assets intact; such activities do not seem to us to be a continuance of the business[;]
 
 
 41
 that this was all that Vass had done in continuing the lease; and that the liquidation of the lessee's resulting damages from the trustee's breach of the duty to refrigerate was "as much a part of the usual administration in bankruptcy, as that of the pay of accountants, custodians or other assistants, employed by the trustee." 59 F.2d at 971. See also Austrian v. Williams, 216 F.2d 278, 285 (2 Cir.1954) (Harlan, J.), cert. denied, 348 U.S. 953, 75 S.Ct. 441, 99 L.Ed. 744 (1955) ("Merely to attempt to collect and liquidate the assets of a debtor is not to carry on its business in any proper sense of the term. See Vass v. Conron Bros....."). If this be so, an attempt to collect and liquidate the assets of a subsidiary would a fortiori not fall within Sec. 959(a). The cases seem to reflect the view, first, that Sec. 959(a) was enacted to deal with garden-variety cases like that of the passenger in Barton v. Barbour, supra, who claimed to have been injured as the result of continued operation of a railroad by a receiver and was doubtless unaware of the insolvency; and, second, that there is no need to strain to give Sec. 959(a) a broad construction since a narrow one means only that the putative suitor must apply for leave, thereby enabling the appointing tribunal to maintain better control over the administration of the estate. Reading Sec. 959(a) as inapplicable here is also more consistent with the language and reasoning of In re Gobel, Inc., 80 F.2d 849, 852 (2 Cir.1936), which was reaffirmed in In re Beck Industries, Inc., 479 F.2d 410, 415, cert. denied, 414 U.S. 858, 94 S.Ct. 163, 38 L.Ed.2d 108 (1973), although the issue in those cases was the somewhat different one of whether the bankruptcy court had jurisdiction to enjoin a third person's suit against a wholly-owned solvent subsidiary of the debtor. We therefore treat the case as if Rothberg were seeking leave to bring Kirschenbaum in his official capacity into the California action that had been initiated by Sloane so that Rothberg could assert claims against him.
 
 
 42
 Putting aside for the moment the question of the California court's in personam jurisdiction over Kirschenbaum, we have no doubt that the bankruptcy court had power to allow Rothberg to cross-claim there against him in his official capacity if this would aid in the efficient administration of the estate. Having jurisdiction to entertain Rothberg's claims against Kirschenbaum for his acts as trustee, the bankruptcy court could direct such claims be submitted to a state court for adjudication, just as it could with respect to unliquidated or contingent claims of creditors of the bankrupt against the estate under Sec. 57(d). Cf. Thompson v. Magnolia Petroleum Co., 309 U.S. 478, 483-84, 60 S.Ct. 628, 630-31, 84 L.Ed. 876 (1940); Ex parte Baldwin, 291 U.S. 610, 618, 54 S.Ct. 551, 555, 78 L.Ed. 1020 (1934) (dictum). Despite some doubt that might otherwise arise from statements in Pepper v. Litton, 308 U.S. 295, 305, 60 S.Ct. 238, 244, 84 L.Ed. 281 (1939), a decision in the California court on a claim thus submitted would normally operate as res judicata against the trustee. See Heiser v. Woodruff, 327 U.S. 726, 736-37, 66 S.Ct. 853, 857-58, 90 L.Ed. 970 (1946).
 
 
 43
 We hold also that in a case where it is appropriate for a bankruptcy court to direct that a claim against a trustee in bankruptcy for acts in his official capacity be adjudicated in a state court, the court has power to direct the trustee to appear in the state court in order to make that court's powers effective. Unless the trustee can be ordered to appear before the court to which the task of liquidation has been delegated, he might frustrate the purposes of the delegation. It is inconceivable that a trustee, who is, after all, an officer of the court, see King v. United States, 379 U.S. 329, 337 n. 7, 85 S.Ct. 427, 431 n. 7, 13 L.Ed.2d 315 (1964), should be so entitled. Having granted leave to a claimant to sue the trustee in his official capacity in another forum, the bankruptcy court--not the trustee--must be able to determine whether he shall appear.[5] No harm can come to the trustee from such an appearance since we are dealing only with claims against him in his official capacity and any judgment, along with the cost of defense, will thus be payable only out of the estate.
 
 II.
 
 44
 The fact that the bankruptcy judge had power to grant Rothberg leave to sue the trustee in his official capacity in the California action and order the trustee to appear as such does not end the matter. His order is still subject to review for "abuse of discretion." While Judge Cannella used this phrase, it is clear that his finding an abuse of discretion was predicated on his view, with which we disagree, that the bankruptcy judge lacked authority to do what he did. We consider in this section whether we may ourselves perform such review or must remand for further consideration by the district judge under a proper standard.
 
 
 45
 We see no reason requiring or rendering it advisable for us to take the latter course. We fully recognize that, as the Supreme Court has recently reminded in National Hockey League v. Metropolitan Hockey Club, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976), and Piper Aircraft Co. v. Reyno, 454 U.S. 235, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981), a court of appeals may not reverse a decision codified by Congress to the discretion of a district judge simply because it would have come to a different conclusion. Here, however, the discretion is vested in the bankruptcy judge, not in the district judge. See, e.g., In re Ira Haupt & Co., 274 F.Supp. 1007, 1011 (S.D.N.Y.1967); Garfinkle v. Levin, 460 F.Supp. 670, 672-73 (S.D.N.Y.1978). If Judge Cannella had concluded that the bankruptcy judge, having jurisdiction, had, or had not, abused his discretion, that decision would have been entitled to no more deference from us than we always give to the considered views of a respected district judge. No purpose would be served by our remanding to the district judge when we are as able to examine the issue of abuse of discretion by the bankruptcy judge as the district judge would be on remand and his determination would be fully reviewable by us on a second appeal that would almost inevitably be taken no matter what he should decide.[6]
 
 III.
 
 46
 We began our review of exercise of discretion by noting that, as said in United States v. Criden, 648 F.2d 814, 819 (3 Cir.1981), "until or unless guiding rules have become fixed, it is important that the exercise of discretion be accompanied by the trial court's articulation of the factors considered and the weight accorded to them ...." Since the bankruptcy judge wrote no opinion, we can glean the basis for his action only from the extended and rather diffuse colloquy at the hearing of May 14, 1982.
 
 
 47
 We would not find an abuse of discretion by the bankruptcy judge if the order granting Rothberg leave to sue in California and directing the trustee to appear in that suit in his official capacity had extended only to what was under discussion at the hearing, namely, Rothberg's claims for amounts unpaid for his services as liquidator and compensatory damages for fraud and wrongful discharge. In view of the fact that Rothberg was already involved in litigation with Sloane growing out of the same transactions and that the events complained of took place in California, the bankruptcy judge could reasonably have deemed it proper to grant leave to sue the trustee in his official capacity and direct him to appear in that forum. It is true that some of the claims asserted by Rothberg appear to run against Sloane rather than against the trustee, and that there is a risk that the California court might decide such questions differently than the bankruptcy court would have done. But this is simply one of the risks of delegation, to be properly weighed against its benefits.
 
 
 48
 An entirely new element was introduced when Rothberg filed cross-claims for $10,000,000 in punitive damages. It is hard to imagine that this would not have had an impact if Rothberg's intention had been revealed at the hearing before the bankruptcy judge.[7] However unlikely it may be that a California jury would award or a California judge would allow punitive damages in any such sum, the threat of imposition of even a modest fraction of that amount, presumably entitled to recognition as an expense of administration, would have given pause, not only on its own account but as a deterrent to vigorous prosecution of Sloane's claims. Yet, as developed above, we cannot even be sure that the bankruptcy judge was aware of the punitive damages claims when he entered his order. At the very least this would require us to reverse and remand for further consideration by him.
 
 
 49
 However, we go beyond this. On any reasonable balancing of the interests of Beck's creditors and the bankruptcy court, on the one hand, and of Rothberg on the other, it would be an abuse of discretion for the bankruptcy judge to facilitate the prosecution of Rothberg's punitive damages claims against the trustee in California, as distinguished from their presentation to him. California is a peculiarly unfavorable forum for the defense of a punitive damages claim like Rothberg's,[8] quite apart from the fact that the California trial would be to a jury whereas a claim against the trustee filed in the bankruptcy court would be determined by a judge. Cal.Civ.Code Sec. 3294 (West 1983) provides that in actions for the breach of "an obligation not arising from contract," which would include Rothberg's claim for fraud and possibly more,[9] the plaintiff may recover exemplary and punitive damages "where the defendant has been guilty of oppression, fraud, or malice," terms that are defined very broadly, as set forth in the margin.[10] In contrast to a state like New York, which forbids evidence of a defendant's wealth to be brought out at trial unless and until the jury has returned a special verdict that the plaintiff is entitled to punitive damages, see Rupert v. Sellers, 48 A.D.2d 265, 268-73, 368 N.Y.S.2d 904, 909-13 (App.Div.1975), California permits the plaintiff to introduce evidence of the defendant's financial condition upon the making of a prima facie case for punitive damages, see Cal.Civ.Code Sec. 3295(a) (West 1983).
 
 
 50
 The situation would be quite different if Rothberg were required to submit his claim for punitive damages as an administrative claim in bankruptcy. We have no doubt that the question of the extent, if any, to which trustees in bankruptcy shall be subject to claims for punitive damages is one of "federal common law" under the doctrine of Clearfield Trust Co. v. United States, 318 U.S. 363, 367, 63 S.Ct. 573, 575, 87 L.Ed. 838 (1943), its predecessors and its progeny. In Heiser v. Woodruff, supra, 327 U.S. at 733, 66 S.Ct. at 856, speaking of the allowance of claims by a bankruptcy court, Chief Justice Stone, citing Clearfield and other cases to similar effect, said that "nothing decided in Erie R. Co. v. Tompkins ... requires a court of bankruptcy, in applying the statutes of the United States governing the distribution of bankrupts' estates, to adopt local rules of law in determining what claims are provable, or to be allowed, or how the bankrupt's estate is to be distributed among claimants." The same principle must apply to the liability of a trustee in bankruptcy, an officer of the court, see King v. United States, supra, 379 U.S. at 337 n. 7, 85 S.Ct. at 431 n. 7, whose efficiency in the performance of his official duties could be seriously impaired in some instances by application of state law. As said in Mishkin, The Variousness of "Federal Law": Competence and Discretion in the Choice of National and State Rules for Decision, 105 U.Pa.L.Rev. 797, 799-800 (1957):
 
 
 51
 [I]nsofar as Erie represents authority for the required application of state law by federal courts, it is not controlling on problems implicated in the operation of a congressional program. From this aspect Erie's basic holding was a determination that ... the area was one where state law governed of its own authority, and the mere grant of jurisdiction to adjudicate a case did not carry with it the power to declare an independent 'general' rule displacing that authority. These propositions are inapposite to problems which bear substantial relation to an established federal operation. As to such questions, state law cannot govern of its own force; there must be competence in the federal judiciary to declare the governing law.
 
 
 52
 To be sure, in most cases, such as garden-variety actions in tort or contract against the trustee, the federal court, in searching for the proper rule to be applied, will find this to be the rule of the state whose law is applicable under general principles of the conflict of laws. But there may be cases where other interests will point to adoption of a different rule, and punitive damages is one.
 
 
 53
 We need not go to the extent of predicting that in a reorganization proceeding under Chapter X or its successor, Chapter 11 of the Bankruptcy Code, a bankruptcy court would never allow punitive damages for acts of a trustee, although something could be said for going that far. At the least, however, bankruptcy courts could properly impose stringent limitations on a trustee's liability for punitive damages, e.g., by insisting that the standard for liability should be the "gross and wanton" standard used in New York, see, e.g., Walker v. Sheldon, 10 N.Y.2d 401, 405, 223 N.Y.S.2d 488, 491, 179 N.E.2d 497, 499 (1961); James v. Powell, 19 N.Y.2d 249, 260, 279 N.Y.S.2d 10, 18-19, 225 N.E.2d 741, 747-748 (1967); cf. Garrody v. Lyle Stuart, Inc., 40 N.Y.2d 354, 360, 386 N.Y.S.2d 831, 833, 353 N.E.2d 793, 795 (1976) (punitive damages permitted only in "singularly rare cases"), rather than California's more generous one, by strictly controlling the amount of such damages, or by subordinating such claims as is done with regard to claims for fines, penalties or punitive damages arising before the earlier of the order for relief or the appointment of a trustee under Sec. 726(a)(4) of the Bankruptcy Code. A bankruptcy judge should be alert to maintain his power to protect the estate against extravagant punitive damages claims against a trustee. We need not debate whether an error by the California court in applying its own rather than federal law to determine the trustee's liability for punitive damages would justify a bankruptcy court in disregarding the judgment under the statements in Pepper v. Litton, supra, 308 U.S. at 305, 60 S.Ct. at 244, despite the later ruling in Heiser v. Woodruff, supra, 327 U.S. at 733-34, 66 S.Ct. at 856-57, "that where the trustee in bankruptcy unsuccessfully litigates an issue outside the bankruptcy court the decision against him is binding in the bankruptcy court." It suffices for decision here that the risks of an assessment of punitive damages by the California court against the trustee and of this being res judicata were too great to be taken by a court whose primary obligation is the protection of the interests of Beck's creditors.
 
 
 
 We thus consider that the bankruptcy judge abused his discretion in entering an order directing the trustee to take a step which would facilitate the rendering of a judgment for punitive damages for Rothberg against the trustee by a California court which might well be res judicata in the bankruptcy proceeding. We therefore affirm the district court's order of reversal, although on a ground quite different from that on which it relied. If, however, before the issuance of the mandate, Rothberg should enter into a stipulation with the trustee withdrawing his punitive damages claims in the California action and providing that such claims will be asserted only in the bankruptcy court if they remain viable after the California judgment, the order of the district court will be reversed with instructions that it affirm the order of the bankruptcy court (except for the second and third ordering paragraphs) with such modifications as are consistent with this opinion and the stipulation.[11]
 No costs.
 
 
 [1]
 It is common ground that by virtue of Sec. 403(a) of the Bankruptcy Reform Act of 1978, Pub.L. No. 95-598, 92 Stat. 2683, this case is governed by the Bankruptcy Act of 1898 as amended
 
 
 [2]
 The complaint alleged that the California judge had first entered ex parte a temporary restraining order freezing the $700,000 and "a mandatory restraining order" requiring Rothberg to turn this sum over to Sloane, but after hearing Rothberg's counsel had vacated the mandatory injunctive provision and left the temporary restraining order in effect pending a hearing on the preliminary injunction scheduled for May 25, 1982. We are not told what happened at the hearing but gather that the freeze has continued in effect
 
 
 [3]
 ORDERED, that in the interests of justice and pursuant to the Court's discretionary and equitable power under the Bankruptcy Act, Stephen Kirschenbaum as reorganization Trustee be and hereby is directed to appear in the California action so that all the rights and obligations between and among the parties can be resolved in one forum, and it is further
 ORDERED, that plaintiff may assert against the Trustee in the California action any and all claims relating to the liquidation of Sloane and any other permissive or mandatory counterclaims or crossclaims, and it is further
 ORDERED, that any order or judgment issued in the California action shall be binding on all parties thereto including the Trustee without a further order of this Court, and it is further
 ORDERED, that the temporary restraining order issued by this Court on May 3, 1982 be and hereby is vacated, and it is further
 ORDERED, that the complaint filed herein by plaintiff shall be deemed withdrawn without prejudice.
 
 
 [4]
 [Q] Have you retained them [Levine, Krom & Unger, California counsel] as an individual as opposed to in your capacity as trustee or in any capacity in connection with Sloane?
 A No. I have retained them as an individual.
 Q Have you asked them to represent you in your capacity as trustee of the Beck estate?
 A I really couldn't give you an honest answer.
 Q Do you know?
 A Not really.
 Q Why couldn't you give me an honest answer?
 A Because the relationship between the Sloane's and Beck with me as trustee, once Mr. Rothberg was terminated, is something that I have not researched legally myself and I'm a little bit unsure as to exactly how the trustee functions under Delaware law with Sloane's as a Delaware corporation once it has no existing board or slate of officers. So I have heard it described as--under California law that as trustee-shareholder I function in that capacity for Sloane's and that I guess technically I'm not sure what that capacity would be in a California corporation or a New York corporation.
 Q Are you a shareholder of Sloane?
 A I really wouldn't know how to answer that question either.
 
 
 [5]
 It may be that, once the bankruptcy court had granted Rothberg leave to sue Kirschenbaum in California in his official capacity, California would have personal jurisdiction over Kirschenbaum in that capacity without his appearance. Section 410.10 of the California Civil Procedure Code declares that California's courts may exercise personal jurisdiction "on any basis not inconsistent with the Constitution of this state or of the United States." While even complete ownership of a subsidiary's stock does not, per se, subject the parent to the jurisdiction of a state having jurisdiction of the subsidiary, Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634 (1925), accord, Restatement (Second) of Conflict of Laws Sec. 52 comment b (1971), courts have held that certain relationships that commonly obtain between parents and their subsidiaries will support jurisdiction over a parent. See, e.g., Massey-Ferguson Ltd. v. Intermountain Ford Tractor Sales Co., 325 F.2d 713 (10 Cir.1963) (per curiam), cert. denied, 377 U.S. 931, 84 S.Ct. 1334, 12 L.Ed.2d 296 (1964), in which it was held that a federal district court sitting in Utah could take jurisdiction of a Canadian corporation because that corporation's "interlocking and integrated control" of its Utah subsidiary, by virtue of which it directed the subsidiary's activities in detail, constituted "doing business" within the state. Cf. Boryk v. deHavilland Aircraft Co., 341 F.2d 666, 668 (2 Cir.1965) (observing "New York's steady movement towards holding, that in determining whether a corporation has engaged in activities in the state, it is immaterial whether these are conducted through a branch or through a subsidiary corporation, even though the latter's formal independence has been scrupulously preserved"). California has its share of similar cases. Thus, in Northern Natural Gas Co. v. Superior Court, 64 Cal.App.3d 983, 134 Cal.Rptr. 850 (1976), California asserted personal jurisdiction of a parent upon evidence that it was engaged in a joint venture with its subsidiary that rendered the subsidiary "an instrumentality or agent"; the court noted in passing that jurisdictional principles were to be construed especially liberally in cases involving claims of fraud perpetrated against citizens of the state. Other factors said to weigh in favor of the assertion of jurisdiction include the occurrence of the alleged tort or breach of contract within California and demonstrable in-state consequences of the foreign parent's out-of-state wrongful actions. See Pope v. National Aero Finance Co., 220 Cal.App.2d 709, 33 Cal.Rptr. 889 (1963). Cf. Mathes v. P.T. National Utility Helicopters, Ltd., 68 Cal.App.3d 182, 137 Cal.Rptr. 104 (1977) (referring to requirement that plaintiff show "more than that amount of control of one corporation over another which mere common ownership and directorship would indicate") (quoting Reul v. Sahara Hotel, 372 F.Supp. 995, 998 (S.D.Tex.1974); Watson's Quality Turkey Products, Inc. v. Superior Court, 37 Cal.App.3d 360, 112 Cal.Rptr. 345, 349 (1974) (requiring a "functional relationship" between parent and subsidiary). All this is consonant with the view espoused in the Restatement (Second) of Conflicts of Laws Sec. 52 comment b (1971) which says that a subsidiary doing an act (or causing an effect) in the state "at the direction of the parent corporation or in the course of the parent corporation's business" subjects the parent to the jurisdiction of the state as if the parent had "itself done the act or caused the effect." There would seem to be no doubt, on this rationale, that action by the trustee causing Sloane to defraud or break its contracts with Rothberg would bring him within the personal jurisdiction of California's courts. However, other California cases suggest a more restrictive approach. See, e.g., Westinghouse Electric Corp. v. Superior Court, 17 Cal.3d 259, 274, 131 Cal.Rptr. 231, 242, 551 P.2d 847, 858 (1976) (dictum) ("Jurisdiction over a foreign parent corporation will only be sustained where the foreign parent manipulates the subsidiary to the detriment of creditors or the subsidiary is an alter ego of the parent."); Empire Steel Corp. v. Superior Court, 56 Cal.2d 823, 17 Cal.Rptr. 150, 366 P.2d 502 (1961)
 While we do not attempt to predict what the California courts would have held with respect to personal jurisdiction over Kirschenbaum in his official capacity if the bankruptcy court had simply given Rothberg leave to sue Kirschenbaum in California but had not ordered Kirschenbaum to appear, we have said enough to show that it would have been foolhardy for Kirschenbaum to suffer judgment to be taken against him by default rather than appear specially to contest in personam jurisdiction, as permitted by Cal.Civ.Proc.Code Sec. 418.10(a) (West 1973).
 
 
 [6]
 An a fortiori analogy for our undertaking the review without remand is furnished by cases in which a court of appeals, having found that the issuance or denial of a preliminary injunction was infected by an error of law, itself decides whether or not the injunction should issue without remanding for a new exercise of discretion by the district judge. See, e.g., Ring v. Spina, 148 F.2d 647, 650 (2 Cir.1945); Perry v. Perry, 190 F.2d 601, 602 (D.C.Cir.1951); Carroll v. American Fed'n of Musicians Union, 295 F.2d 484, 488-89 (2 Cir.1961); A.O. Smith Corp. v. FTC, 530 F.2d 515, 525 (3 Cir.1976); Buffalo Courier-Express Inc. v. Buffalo Evening News, 601 F.2d 48, 59-60 (2 Cir.1979); Continental Group, Inc. v. Amoco Chemicals Corp., 614 F.2d 351, 357-59 (3 Cir.1980). But see Yuba Consol. Gold Fields v. Kilkeary, 206 F.2d 884 (9 Cir.1953). See also the discussion and cases cited in the concurring opinion of Judge Newman in Mallis v. Bankers Trust Co., 717 F.2d 683, 698-99 & n. 2 (2 Cir.1983)
 
 
 [7]
 It is true that Rothberg's counsel offered to exhibit the proposed cross-claims and that the trustee's counsel failed to take him up on the offer. Still nothing was said at the hearing to apprise the judge that the cross-claims involved any such danger to the estate as a $10 million claim for punitive damages
 
 
 [8]
 Despite our view, expressed below, that the liability of Kirschenbaum as trustee for punitive damages is a matter of federal law, there can be no assurance that a California court would not apply California law, either because it disagrees with our view or because it thinks a federal court would select California law with respect to punitive damages as the appropriate "federal" rule in this case, see, e.g., Royal Indemnity Co. v. United States, 313 U.S. 289, 61 S.Ct. 995, 85 L.Ed. 1361 (1941); United States v. Yazell, 382 U.S. 341, 86 S.Ct. 500, 16 L.Ed.2d 404 (1966)
 
 
 [9]
 Rothberg has also alleged that his wrongful discharge involved the "threat of deadly force," which might well ground liability in tort. He might further argue that the trustee's actions in connection with his dismissal as president of Sloane constituted tortious interference with his contractual relations. See Herron v. State Farm Mutual Ins. Co., 56 Cal.2d 202, 14 Cal.Rptr. 294, 363 P.2d 310 (1961); Dryden v. Tri-Valley Growers, 65 Cal.App.3d 990, 135 Cal.Rptr. 720 (1977)
 
 
 [10]
 (c) As used in this section, the following definitions shall apply:
 (1) "Malice" means conduct which is intended by the defendant to cause injury to the plaintiff or conduct which is carried on by the defendant with a conscious disregard of the rights or safety of others.
 (2) "Oppression" means subjecting a person to cruel and unjust hardship in conscious disregard of that person's rights.
 (3) "Fraud" means an intentional misrepresentation, deceit, or concealment of a material fact known to the defendant with the intention on the part of the defendant of thereby depriving a person of property or legal rights or otherwise causing injury.
 
 
 [11]
 In the event of Rothberg's willingness to do this, the trustee should agree that he will not advance any argument on the score of claim-splitting, see Restatement (Second) of Judgments Sec. 26(1)(a) (1980), if Rothberg, after having prevailed on his claims for compensatory damages in California, should seek punitive damages before the bankruptcy court. Also the stipulation should make clear beyond peradventure that any appearance by Kirschenbaum in the California action is solely in his official capacity and will not subject him to personal liability