22-1788, 22-1793
*In re Fiske Place, LLC*

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of The United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 30th day of June, two thousand twenty-three.

PRESENT:
> JOHN M. WALKER, JR.,
> RICHARD C. WESLEY,
> BETH ROBINSON,
> > *Circuit Judges.*

---

IN RE: 22 FISKE PLACE, LLC,

> *Debtor.*

NICHOLAS GORDON,

> *Plaintiff-Appellant,*

> v.                                                                  Nos. 22-1788, 22-1793

IAN J. GAZES, CHAPTER 11 TRUSTEE,

> *Defendant-Appellee.**

---

* The Clerk of Court is respectfully directed to amend the official caption in 22-1788 as listed above.

FOR APPELLANT:                                    STANISLAV GOMBERG, Gomberg Legal, P.C., Ossining, NY.

FOR APPELLEE:                                     DAVID DINOSO, ESQ., New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Failla, *J.*).

**UPON DUE CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the order appealed from, entered on July 18, 2022 is **AFFIRMED.**

This case involves a Chapter 11 bankruptcy proceeding and related litigation initiated by Plaintiff-Appellant Nicholas Gordon. Gordon is the sole member of 22 Fiske Place, LLC, the debtor in the Chapter 11 bankruptcy proceeding ("Debtor"). Debtor is a limited liability company formed under New York law. This appeal implicates two of Debtor's assets: 1) a multi-unit residential brownstone located at 22 Fiske Place, Brooklyn, New York (the "Property"), and 2) a disputed interest in certain "surplus funds" held by the Kings County Clerk arising from the foreclosure sale through which Debtor acquired the Property.

We assume the parties' familiarity with the underlying facts, procedural history, and arguments on appeal, to which we refer only as necessary to explain our decision to affirm.

In May 2015, Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The bankruptcy court approved the appointment of Ian J. Gazes as Chapter 11 Trustee, confirmed the Trustee's Chapter 11 Plan (the "Plan"), and approved the sale of the Property which closed in August 2016. Based on an agreement between the Trustee and the IRS, the IRS had sixty days from the closing day to determine Debtor's liability, if any, for capital gains taxes arising from the sale of the Property. To ensure funds would remain available during this sixty-day period, the Trustee agreed to refrain from distributing any funds that remained in Debtor's Estate once he made all distributions required under the Plan. During this period, the IRS did not make a claim against the Estate for taxes arising from the sale of the Property. Instead, the IRS filed a letter with the bankruptcy court stating the following:

> [T]he IRS is not pursuing the collection of any capital gains taxes from the Debtor in this bankruptcy case. Notably, the Debtor is a single member limited liability company that never elected to be treated as a corporation under the applicable Treasury Regulations and thus, the Debtor is a disregarded entity for Federal income tax purposes. *See* 26 CFR 301.7701-3. Accordingly, the Government is not seeking to collect any capital gains taxes from the Debtor, but reserves all of its rights to collect the capital gains taxes from the appropriate individual who is liable for the taxes.

App'x 766. As a consequence, the Trustee did not file any income tax returns on behalf of Debtor, did not pay any taxes arising from the sale of the Property, and did not subsequently hold any proceeds of the sale in escrow for the purpose of funding any tax liability associated with the sale—decisions that gave rise to several of Gordon's claims at issue in this appeal.

The second focus of Gordon's challenges involves the Trustee's payment of attorney's fees in connection with Debtor's efforts to collect more than $200,000 in "surplus funds" remaining after the 2008 foreclosure sale in which Debtor acquired the Property. Several years after the foreclosure sale, Debtor, through counsel, made a claim to the funds in the New York Supreme Court in order to satisfy a default judgment for unpaid rent against the prior owners of the Property. The state court awarded the surplus funds to Debtor's Estate, and Debtor's counsel in the state court proceeding moved in the bankruptcy court for an order directing the Trustee to pay counsel $10,616 from Debtor's Estate for its service in securing the surplus funds. The bankruptcy court granted the order, and the Trustee complied.

Following the award, the Trustee discovered suspected fraud in connection with Debtor's claims to the surplus funds from the state court action.

4

In 2018, upon motion by the Trustee, the bankruptcy court ordered the Trustee to seek reconsideration of the award in the state court. Protracted litigation ensued. In February 2020, the state court entered an order directing the surplus funds be returned to the Kings County Clerk's Office. The Trustee complied. Because the Trustee had paid $10,616 from the surplus funds to comply with the bankruptcy court's order to pay counsel for its service in securing the money, Debtor's Estate was left with a $10,616 "deficiency."[1]

Due to the protracted litigation before the state and bankruptcy courts, and now before this Court, the bankruptcy court has yet to issue a final decree and close the case. And although the sale of the Property closed in 2016, the assets of Debtor's Estate will not vest in the reorganized Debtor until the bankruptcy court issues a final decree.

In a letter dated December, 2020, Gordon's counsel sought leave from the bankruptcy court 1) to file an adversary proceeding to secure a declaratory judgment that Debtor's Estate was liable for capital gains taxes arising from the

---

[1] We understand Gordon to use the term "deficiency" to mean that the impact on Debtor's Estate with respect to returning the surplus funds to the state court resulted in a $10,616 net loss to Debtor's Estate.

sale of the Property, 2) to file claims against the Trustee under the "*Barton*[2] doctrine" for damages due to the Trustee's alleged failure to file all tax returns, pay all taxes, and properly discharge his obligations to escrow money to fund the taxes arising from the sale, and 3) to file a claim against the Trustee under the *Barton* doctrine for breaching his fiduciary duties by incurring the $10,616 deficiency. The Trustee soon after filed motions for sanctions against Gordon's counsel, and Gordon cross-moved for an order disqualifying Gazes as Debtor's Trustee.

Before the bankruptcy court took any action, Gordon initiated an adversary proceeding in the bankruptcy court, requesting leave pursuant to the *Barton* doctrine to bring the above claims against the Trustee in the Eastern District of New York.

The Trustee moved to dismiss the complaint on a number of procedural and substantive grounds. The bankruptcy court issued a decision and orders in August 2021 granting the Trustee's motion for sanctions, denying Gordon's cross motion for an order disqualifying the Trustee, dismissing the adversary

---

[2] In *Barton v. Barbour*, 104 U.S. 126, 136–137 (1881), the Supreme Court established that before a plaintiff can file an action against a bankruptcy trustee in a court that did not appoint the trustee, the plaintiff must first request leave of the bankruptcy court.

complaint pursuant to Fed. R. Civ. Pro. 12(b)(6), and approving the Trustee's

application for interim professional fees to pay the Trustee's counsel.[3]  Gordon

appealed.

The district court dismissed Gordon's appeal of the interim fee order and

the sanctions order on the ground that Gordon lacked standing to appeal the

orders because he did not show sufficient pecuniary interest in the orders.[4]  The

district court also affirmed the bankruptcy court's dismissal of the adversary

complaint.  Gordon now appeals the district court's dismissal of his appeal of the

interim fee order and its affirmance of the bankruptcy court's dismissal of his

adversary proceeding against the Trustee.[5]

---

[3] We interpret the bankruptcy court's dismissal of the adversary complaint as a denial of Gordon's request for leave under the *Barton* doctrine to bring an action in district court on the basis that the proposed claims failed as a matter of law.

[4] It also concluded that Gordon forfeited his right to appeal the sanctions order by failing to object to it in the bankruptcy court.  Gordon does not challenge the sanctions order in this appeal.

[5] The appeals to the district court relating to these respective issues were docketed separately (Nos. 21-cv-8090 and 21-cv-8093), but the district court issued a single "Opinion and Order" addressing both appeals.  Gordon separately noticed appeals to this Court of the respective district court rulings, resulting in the two distinct docket numbers in this Court.

## I. Interim Fee Order

We review without deference the district court's dismissal on standing grounds of Gordon's appeal of the bankruptcy court's order allowing an interim award of fees to Trustee's counsel. *Wight v. BankAmerica Corp.*, 219 F.3d 79, 86 (2d Cir. 2000). To have standing to appeal from a bankruptcy court ruling, this Court has required that an appellant be a "person aggrieved." *Kane v. Johns-Manville Corp.*, 843 F.2d 636, 642 (2d Cir. 1988).[6] An aggrieved person is a person "directly and adversely affected pecuniarily by the challenged order of the bankruptcy court." *In re DBSD North America, Inc.*, 634 F.3d 79, 89 (2d Cir. 2011). This requirement is more exacting than injury-in-fact under Article III because courts have recognized the need to limit appellate standing for bankruptcy litigation to prevent potentially endless appeals brought by parties indirectly affected by every bankruptcy order. *Kane*, 843 F.2d at 642. To qualify as an aggrieved person, therefore, Gordon must show that the district court's interim fee order directly harmed his financial interests. He cannot make that showing here.

---

[6] In quotations from caselaw and the parties' briefing, this order omits all internal quotation marks, alterations, footnotes, and citations, unless otherwise noted.

Gordon does not have a direct financial interest in the court's interim fee order. His theory is that payments pursuant to the interim fee order reduce the funds ultimately available to him as sole member of the LLC. But the money awarded to pay counsel's costs and fees is withdrawn from Debtor's Estate, not Gordon's own pocket. Under the Plan, all surplus monies after payment of creditors will ultimately vest in the reorganized Debtor—the LLC. App'x 269. Under New York law, members of an LLC do not have an interest in an LLC's property. N.Y. Ltd. Liab. Co. Law § 601 ("A membership interest in the limited liability company is personal property. A member *has no interest* in specific property of the limited liability company.") (emphasis added). So any diminution in the value of Debtor's Estate resulting from payment of interim fees will ultimately impact Debtor, not Gordon as its sole member. We therefore agree with the district court's conclusion that Gordon is not an aggrieved person and thus lacks standing to challenge the bankruptcy court's grant of interim professional fees, and we affirm the district court's dismissal of Gordon's appeal of that order.

## II. Dismissal Order

"An order of a district court functioning in its capacity as an appellate court in a bankruptcy case is subject to plenary review." *In re Lehal Realty Assocs.*, 101 F.3d 272, 276 (2d Cir. 1996).

We review a bankruptcy court's ruling on a request for leave to file an action against a trustee in another court for abuse of discretion. *In re Beck Indus., Inc.*, 725 F.2d 880, 889 (2d Cir. 1984). But where, as here, the denial was based on a legal conclusion—that the claims would fail as a matter of law—we review the bankruptcy court's reasoning without deference. *In re Lehal Realty*, 101 F.3d at 276.

We reject Gordon's various claims that the Trustee violated his legal duties by failing to file income tax returns, pay taxes arising from the sale of the Property, or maintain and disburse a tax escrow.

As to Gordon's statutory argument, we conclude that the Trustee had no duty to file a tax return or pay income taxes on the sale of the property. As a limited liability company with a single member, Debtor is a "disregarded entity" for tax purposes because it elected to forego being treated as a corporation under U.S. Treasury Regulations. *See* 26 CFR 301.7701-3; *see supra* at 3–4. As a

disregarded entity, Debtor is not liable for capital gains taxes on proceeds from the sale of its real property; instead, the liability for payment of income taxes on the sale of the Property falls to its individual member or members. 26 CFR 301.7701-3. For that reason, the Trustee did not violate any laws by failing to file tax returns or pay taxes on Debtor's behalf.

Gordon's alternative argument that, independent of any statutory obligation, the Trustee was required to escrow funds from the sale of the Property to fund payment of taxes arising from that sale likewise fails. He bases this argument on an exchange between the bankruptcy judge and the Trustee during the confirmation hearing in which the Trustee mentioned he would "hold" remaining funds in escrow until the IRS determined any tax liability owed as a result of the property sale. App'x 129. The court noted that this was to ensure that any money the IRS wanted to pursue would remain available "until there[] [was] a final determination." App'x 132. And the IRS made a final determination that it would *not* seek any payment from Debtor's Estate. Nowhere in the confirmation order did the bankruptcy court require the Trustee to hold $400,000 in escrow indefinitely to pay any taxes the IRS demanded from another person, including Gordon. Instead, the court ordered that any funds

remaining after the completion of all distributions would "remain property of the estate, subject to the Trustee's ongoing costs of administration . . . until . . . sixty (60) days after the closing on the Sale of the Property" or by order of the court or consent of the Trustee and the IRS. App'x 253–54. The Trustee complied with that order.

We therefore conclude that Gordon cannot make a claim against the Trustee for gross negligence and breach of fiduciary duty for failing to file tax returns, pay taxes, or escrow proceeds to fund payment of taxes due on account of the sale of the Property.

Finally, for the same reasons Gordon lacks standing to appeal the interim fee order, he lacks standing to bring a claim against the Trustee in connection with the claimed $10,616 deficiency. *See supra* at 8–10. Any claims to recover any funds improperly paid from Debtor's Estate (and we do not consider whether any payments were in fact improper) belong to Debtor, not Gordon. Any reduction in Debtor's Estate will impact the monies, if any, to be returned to reorganized Debtor upon entry of a final decree. App'x 269. For that reason, it is Debtor, not Gordon, who has the cognizable interest in preserving the funds in Debtor's Estate, N.Y. Ltd. Liab. Co. Law § 601, and Gordon lacks standing to sue

the Trustee for losses to Debtor's Estate arising from the Trustee's payment of attorney's fees and subsequent repayment of surplus funds to the state court pursuant to the bankruptcy court's and state court's orders.

* * *

We have considered Gordon's remaining arguments and conclude that they are without merit.  The district court's order is **AFFIRMED.**

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court