**In re Jack YANKS and Ruth Yanks, Debtors.**

**Bankruptcy No. 83–01923–BKC–SMW.**

United States Bankruptcy Court, S.D. Florida.

May 9, 1985.

William Roemelmeyer, trustee, Craig I. Lifland, Miami, Fla., for Consumers Ins.

Timothy J. Norris, Miami, Fla., for trustee.

## ORDER DENYING ADMINISTRATIVE CLAIM OF CONSUMERS INSURANCE GROUP

SIDNEY M. WEAVER, Bankruptcy Judge.

This matter came before the Court on the motion of Consumers Insurance Group, Inc. ("Consumers Insurance") to allow as an expense of administration a judgment against the Debtors. William Roemelmeyer, the Chapter 11 trustee of the Debtors' estate ("Trustee"), opposed the motion, which was heard on February 7, 1985, after which the parties submitted memoranda of law.

Although the facts are not in dispute, a brief recitation of them sets the stage for the contrasting positions of Consumer Insurance and the Trustee:

On October 20, 1983, the Debtors filed a joint petition under Chapter 11. After several unsuccessful attempts to have a disclosure statement approved, the Trustee was appointed on December 5, 1984. Prior to the commencement of the case, the Debtors operated a restaurant which became severely damaged by fire on July 2, 1981. The Debtors demanded payment of insurance proceeds from Consumers Insurance, the denial of which resulted in a suit in state court. Subsequent to the commencement of this case, the Debtors sought permission of this Court to proceed with the litigation, which was granted with the additional provision that counterclaims by Consumers Insurance also could be determined in the state court.

In April of 1984, Consumers Insurance paid insurance proceeds of $136,631.05 to various mortgagees and lessors of the restaurant as loss payees under the insurance policy and counterclaimed in the state court by virtue of an assignment from these parties and by subrogation to recover the $136,631.05 from the Debtors. On June 4, 1984, the state court entered a judgment against the Debtors for $136,631.05 based upon a jury verdict which found that the Debtors or an agent of the Debtors intentionally caused or procured the fire which damaged the restaurant and that they knowingly or willfully misrepresented or concealed material facts from Consumers Insurance with respect to the insurance claim. The judgment further recited that Consumers Insurance was entitled to the judgment against the Debtors as damages sustained in paying the loss payees for the damage caused by the fire.

Consumers Insurance asserts that it is entitled to reimbursement as an expense of administration for its payment to the loss payees because the payment was made post-petition and because its right of action against the Debtors arose only after the jury returned its verdict aforesaid, which also occurred post-petition. This right of action was initially characterized as a subrogation right but subsequently was called a right of indemnification. The Trustee responds that all of the events which gave rise to the claim of Consumers Insurance—the execution of mortgages, leases, and the insurance policy, as well as the fire—occurred pre-petition and also that no benefit has been accorded to the Debtors' estate and thus Consumers Insurance is not entitled to administrative priority but perhaps has a pre-petition claim against the estate.

Consumers Insurance relies primarily upon *In re M. Frenville Co.*, 744 F.2d 332 (3d Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 911, 83 L.Ed.2d 925 (1985), in which the Court of Appeals for the Third Circuit held that the automatic stay of 11 U.S.C. § 362(a) was inapplicable to a third-party action for indemnification or contribution accruing post-petition but arising out of acts occurring pre-petition. In *Frenville*, creditors of Chapter 7 debtors, a corporation and one of its principals, sued the corporate debtor's auditors for damages as a result of relying upon allegedly false financial statements, which were prepared pre-petition from information provided by the debtors pre-petition. The auditors sought relief from the automatic stay to join the debtors as third-party defendants to obtain indemnification or contribution. Both the bankruptcy court and the district court held that the auditors were not entitled to relief from the automatic stay. The Court of Appeals reversed by concluding that the automatic stay was inapplicable, because, it said, the auditor's indemnification or contribution claim did not constitute a "claim" or a "right to payment" which arose prior to the commencement of the Frenville bankruptcy cases and thus was not stayed by § 362. 744 F.2d at 337. Although *Frenville* deals with the automatic stay rather than entitlement to administrative priority, the principle of law recited therein is applicable to the instant case.

This Court could distinguish the *Frenville* decision on the basis that the Court of Appeals explicitly stated that pre-petition indemnity and surety contracts give rise to contingent claims under the Bankruptcy Code. 744 F.2d at 336–337. Certainly the payment by Consumers Insurance grew

out of a pre-petition contract which made it liable to the loss payees, irrespective of the Debtors' acts or their liability to Consumers Insurance.

This Court, after careful consideration, respectfully elects not to follow the *Frenville* decision, for the following reasons:

1. The court's reliance upon *Vanston Bondholders Protective Committee v. Green*, 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946), appears to be misplaced. While the Supreme Court did state, at page 161, 67 S.Ct. at page 239,

> What claims of creditors are valid and subsisting obligations against the bankrupt at the time a petition in bankruptcy is filed is a question which, in the absence of overruling federal law, is to be determined by reference to state law.

the Court also said, at page 162, 67 S.Ct. at page 239,

> In determining what claims are allowable and how a debtor's assets shall be distributed, a bankruptcy court does not apply the law of the state where it sits.

and finally stated, at page 163, 67 S.Ct. at page 240, that bankruptcy courts are bound to follow the Bankruptcy Act as interpreted by the Supreme Court. The holding of that case is that federal case law under the Bankruptcy Act and developed in federal equity receiverships prohibited the allowance of a claim which was valid and enforceable under state law. That holding does not support *Frenville's* reliance upon state law to determine if a claim existed against the debtors at the time that the bankruptcy cases were commenced.

2. *Frenville* is not consistent with the more recent decision of the Supreme Court in *Ohio v. Kovacs*, 469 U.S. ——, 105 S.Ct. 705, 83 L.Ed.2d 649 (1985). There, the Supreme Court followed Congressional intent by applying a broad definition of "claim" and held that a state's injunction against an individual debtor had become an obligation to pay money, a claim dischargeable in bankruptcy. The Court's inquiry focused on the definition of "claim" in the Bankruptcy Code and its legislative history. Not once did the Supreme Court find it

necessary to consider state law to determine whether there was a "claim" or right of payment.

3. In addition, *Frenville* fails to consider fundamental bankruptcy policies. It would leave to the vagaries of the timing of events by third parties such obviously crucial issues of bankruptcy relief as priorities of distribution and dischargeability of obligations. To permit a claim to be discharged when creditors file a suit against a third party before a petition is filed and to prevent a claim from being discharged if those same creditors filed the same suit against the same third party after a petition is filed is simply inequitable. Likewise, it contravenes the purpose of the bankruptcy laws expressed many years ago by the Supreme Court in *Williams v. U.S. Fidelity & Guaranty Co.*, 236 U.S. 549, 557, 35 S.Ct. 289, 291, 59 L.Ed. 713 (1915):

> It would be contrary to the basal spirit of the bankrupt law to permit a surety, by simply postponing compliance with his own promise in respect of a liability until after bankruptcy, to preserve a right of recovery over against his principal, notwithstanding the discharge would have extinguished this if the surety had promptly performed as he agreed. Such an interpretation would effectually defeat a fundamental purpose of the enactment.

4. Furthermore, *Frenville*, in its references in footnote 11 to recovery of a money judgment directly from property of the estate if the auditors were to be successful in their indemnity or contribution case, not only disregards the statutory scheme for distribution to creditors in a chapter 7 case set forth in 11 U.S.C. § 726 but also turns 11 U.S.C. § 509 on its head by permitting a tortfeasor to collect from the estate of his joint tortfeasor ahead of the injured party, which shares with other unsecured creditors at the bottom of the distribution chain. (Section 509 subordinates the claim of a co-debtor to the claim of the creditor until the creditor is paid in full). Such an unusual result seems inconsistent with a bankruptcy court's role as a "court of equi-

ty". *See Bank of Marin v. England,* 385 U.S. 99, 87 S.Ct. 274, 17 L.Ed.2d 197 (1966); *Vanston Bondholders Protective Committee v. Green,* 329 U.S. 156, 67 S.Ct. 237, 91 L.Ed. 162 (1946).

Thus, this Court respectfully chooses not to follow the *Frenville* decision.

It does appear to the Court that the claim being asserted by Consumers Insurance in its motion is really a subrogation claim, as indeed it was called in the motion. The insurance policy attached to the motion is in language to that effect, as is the assignment attached to the motion. As a subrogation claim, the claim of Consumers Insurance is on the same footing as the claim of the loss payees. 11 U.S.C. § 509. However, the claim cannot constitute an actual, necessary expense of preserving the estate when it arose from the Debtors' alleged pre-petition arson of their property. *See* 11 U.S.C. § 503(b)(1).

In summary, the Court agrees with the Trustee's position that the claim by Consumers Insurance is not an expense of administration for two reasons: all of the operative acts and legal relationships occurred prior to the commencement of the case; and the estate received no benefit from the payment by Consumers Insurance to the loss payees.

Accordingly, it is

ORDERED that the Motion Requesting Payment of Post-Petition Debt or in the Alternative to Allow Administrative Claim of Consumers Insurance Group, Inc., is denied.