**In the Matter of HI–LO POWERED SCAFFOLDING, INC., Debtor.**

**HI–LO POWERED SCAFFOLDING, INC., et al., Plaintiffs,**

**v.**

**David W. PENN, et al., Defendants.**

**Bankruptcy No. 1–82–03419.**
**Adv. No. 1–86–0263.**

United States Bankruptcy Court, S.D. Ohio, W.D.

March 6, 1987.

While the company was able to maintain product liability coverage until 1976, thereafter it was unable to obtain such insurance at any price. The company apparently never purchased directors' and officers' liability insurance.

In an attempt to limit their own personal exposure to litigation arising from "causes and reasons that were currently unknown," on April 1, 1981 the board of directors amended the corporate by-laws to provide for indemnification by the corporation for all expenses and judgments against the officers and directors arising from the good faith performance of their duties. The financial burden of the litigation pending against the company forced it to seek relief under Chapter 11 on December 1, 1982.

For purposes of this discussion, the next significant event in this case occurred on June 22, 1983 when the debtor filed a disclosure statement and plan of reorganization. The plan classifies creditors into eight classes. The claims of priority, secured and unsecured trade creditors (Classes A through D) are to be paid in full or assumed by the reorganized company. Class J, which consists solely of the personal injury claimants, is to be paid out of a "contingent fund." The amount of this fund is to equal the "net value" of the debtor (liquidation value less the present value of all secured and unsecured debt in classes A through I), and is to be funded by the debtor in $5000 monthly installments until the total "net value" is realized. After judgment is entered in all of the claimants' lawsuits, the fund will be divided pro rata among the Class J claimants.

The filing of the plan and disclosure statement was followed by an application to set the bar date filed on June 30, 1983 and approved the same day. On July 5, 1983 the Clerk of the Bankruptcy Court sent notice to the debtor, the attorney for the debtor, and all creditors listed on the

Norman L. Slutsky, Cincinnati, Ohio, for debtor.

Michael G. Kohn, Cincinnati, Ohio, for plaintiffs.

Jeffrey Marks, Cincinnati, Ohio, for defendants.

## FINDINGS OF FACT, OPINION AND CONCLUSIONS OF LAW

RANDALL J. NEWSOME, Bankruptcy Judge.

This is a Chapter 11 adversary proceeding in which the officers and sole shareholders[1] of Hi-Lo Powered Scaffolding, Inc. have moved for a preliminary injunction under 11 U.S.C. § 105(a) seeking to enjoin David W. Penn and Julio D. Varela from prosecuting a civil action pending against them in the Superior Court of the District of Columbia.

Most of the salient facts surrounding this dispute are set forth in stipulations submitted by the parties on January 5, 1987. These stipulations, as well as the evidence presented at the December 29, 1986 hearing on the motion and the briefs filed by both sides, establish the following facts: Hi-Lo Powered Scaffolding Inc. is a manufacturer of powered scaffolding equipment. Between 1976 and 1982 the company was confronted with numerous personal injury lawsuits claiming millions of dollars in damages arising from alleged defects in Hi-Low's scaffolding products.

---

1. Anthony Wayne Mauldin is President of the company, Carolyn Seamon is Vice-President, and Meathel B. Mauldin is Secretary-Treasurer. All three are on the board of directors, and are the sole shareholders of the reorganized company. For clarity, we shall refer to these three as the "principals" throughout the remainder of this opinion.

debtor's schedules stating that creditors had until August 4, 1983 to file proofs of claim. While it appears that the principals of the corporation were not sent notice of the bar date,[2] none of them has alleged that they were unaware of the August 4 bar date. Because of their position as officers and directors of a closely-held corporation and their active participation in the reorganization process, we find it more probable than not that they were made aware of the bar date, either from the notice sent to the debtor or through debtor's counsel.

On August 3, 1983 at 3:52 p.m., proofs of claim were filed on behalf of Penn and Varela asserting personal injury claims against the debtor of $1,000,000 and $22,-500 respectively. Each of the proofs of claim states that the claimant and debtor agreed to settle an action filed in the Superior Court of the District of Columbia; that the debtor agreed to pay the sum stated in the proof of claim plus "an assignment of any action which debtor may have against any insurer relating to claimant's claim against Debtor;" and that Penn's $1,000,-000 claim was secured by all of the debtor's assets. The following sentence also appears in the footnote to each:

> Nothing in this proof shall constitute a waiver or release by claimant of any claim which he may have against the Debtor or any other person, including but not limited to Debtor's insurers, shareholders officers or agents.

None of the principals, who were not represented by counsel, were aware of this addendum to Penn and Varela's proofs of claim. None of them ever filed proofs of claim seeking indemnification as officers, nor did they file proofs of interest as shareholders.

On October 6, 1983 the debtor filed an amended disclosure statement which was approved by order of December 16, 1983.

With inconsequential amendments the plan was confirmed by order of January 26, 1984 pursuant to appropriate notice and hearing. Since that time, the debtor has paid its trade creditors and administrative priority creditors in full, has maintained its payments to secured creditors, and has contributed $5000 per month to the contingent fund. Payments from this fund, however, must await the liquidation of all of the personal injury lawsuits, which may not occur for some time.

On November 11, 1985, some 21 months after confirmation of the debtor's plan, Penn and Varela (hereinafter referred to as "claimants") filed a lawsuit against the principals in the Superior Court of the District of Columbia. While the complaint is hardly a model of clarity, it seems to assert that the principals committed a fraud on the claimants by designing and manufacturing a scaffolding stirrup which they knew or should have known was defective, by failing to procure liability insurance, by subjecting the corporations's assets to liability, and by putting Hi-Lo into a Chapter 11 proceeding after purportedly settling claimants' lawsuits against the company. They ask the court to pierce the corporate veil, find the principals guilty of fraud, and award each claimant their original settlement amount plus $10,000,000 each in punitive damages. The principals assert, and we find, that they had no personal knowledge that Penn and Varela were asserting these claims against them until the date they received the summons and complaint.

Sometime after the complaint was filed, the principals filed a motion to dismiss, which the Superior Court judge denied by order of April 11, 1986. An appeal from that order is presently pending. This adversary proceeding followed on December 19, 1986.

---

**2.** Although Anthony Mauldin, Meathel Mauldin and Carolyn Seamons are listed in the debtor's statement of financial affairs as officers holding 20% or more of the issued and outstanding stock of the corporation, none of the three was included in the schedules, amendments thereto, or the mailing matrix filed by the debtor. *See,* Rule 1007(b) of the Interim Rules and Forms to Supplement Local Rules of the U.S. Bankruptcy Court, Southern District of Ohio (eff. February 1, 1980).

The debtor and principals urge this Court to enjoin the claimants from pursuing their lawsuits in order to both protect the Bankruptcy Court's processes and to thwart the claimants from circumventing the Chapter 11 plan which they voted to accept. The principals further assert that they hold a postpetition claim against Hi-Lo for indemnification of any legal expense in defending the lawsuit and for any judgment rendered against them, and that their potential claim against the reorganized company might adversely affect Hi-Lo's ability to consummate its confirmed plan. They further justify injunctive relief on the ground that the claimants do not have a cognizable claim against the principals, since none of them was a party either to the personal injury action or the settlement agreement.

The claimants counter that the principals had a prepetition rather than a postpetition claim for indemnification. Since they failed to file proofs of claim prior to the bar date, and the plan made no provision for them, those claims were discharged under 11 U.S.C. § 1141(d)(1). Thus, they reason, since the reorganized company owes no obligation to indemnify, judgment against the principals will have no effect on the debtor's ability to consummate the plan. According to the claimants, the principals are attempting to make the debtor's discharge applicable to claims asserted individually against the principals in contravention of § 524(e)[3].

In attempting to unravel the vexing issues presented in this proceeding, we deem it necessary to state what is not at issue here. Nowhere do the principals assert, nor do the facts indicate, that the debtor's discharge under § 1141(d)(1) purported to discharge the principals' debts too. Thus, § 524(e) does not come into play.

It is equally clear that notwithstanding the principals' ardent attempts to have us review the merits of the claimants' Superior Court action, we may not do so, nor may we interfere with the state court's jurisdiction merely because the action might appear to be frivolous or brought in bad faith, or even menacing to the principles underlying Chapter 11 of the Bankruptcy Code.[4] Equitable restraint and comity between the state and federal courts dictate that the merits of claimants' action and their reasons for bringing it must be left for decision by the Superior Court and the appellate courts of the District of Columbia.

The sole basis for granting the principals' motion hinges on whether the failure to enjoin would adversely affect the bankruptcy estate and whether the standard for issuing a preliminary injunction under Rule 65 of the Federal Rules of Civil Procedure has been met. The factors to be balanced are:

1) Whether the plaintiff has shown a strong or substantial likelihood of success on the merits;

2) Whether the plaintiff has shown irreparable injury;

3) Whether the issuance of a preliminary injunction would cause substantial harm to others;

4) Whether the public interest would be served by issuing a preliminary injunction.

*Baldwin-United Corp. v. Paine Webber Group, Inc.*, 57 B.R. 759, 766 (S.D.Ohio 1985); *See also, In re DeLorean Motor Co.*, 755 F.2d 1223, 1228 (6th Cir.1985); *In re Otero Mills, Inc.*, 25 B.R. 1018, 1021 (D.N.M.1982).

In addressing the issue of whether claimants' suit may have an adverse impact on the debtor, we must first determine whether the principals had a prepetition or postpetition claim based on the corporate bylaws providing for indemnification. We conclude that the principals' claim for in-

---

**3.** Section 524(e) provides that "discharge of a debt of the debtor does not affect the liability of any other entity on, or the property of any other entity for, such debt."

**4.** The principals have neither asserted nor established that a constitutional basis for injunctive relief might be available. *See, e.g., Huffman v. Pursue, Ltd.*, 420 U.S. 592, 95 S.Ct. 1200, 43 L.Ed.2d 482 (1975); *Lamb Enterprises, Inc. v. Kiroff*, 549 F.2d 1052 (6th Cir.1977), *cert. denied*, 431 U.S. 968, 97 S.Ct. 2926, 53 L.Ed.2d 1064 (1977).

demnification arose prepetition. As this court has previously held, the definition of "claim" under 11 U.S.C. § 101(4)(A) as a "right to payment" is extremely broad in its sweep, and includes "all legal obligations of the debtor, no matter how remote or contingent ..." House Report No. 95–595, 95th Cong. 1st Sess. 309 (1977); Senate Report No. 95–989, 95th Cong.2d Sess. 21 (1978), U.S. Code Cong. & Admin. News 1978, pp. 5787, 5807, 6266; *In re Baldwin-United Corp.*, 57 B.R. 759, 765 (S.D.Ohio 1985). Regardless of when the principals' cause of action for indemnification might have accrued under state law, their "right to payment" arose at the "time when the acts giving rise to the alleged liability were performed." *In re Johns-Manville Corp.*, 57 B.R. 680, 690 (Bankr.S. D.N.Y.1986); *See also, In re A.H. Robins Co., Inc.*, 63 B.R. 986, 993 (Bankr.E.D.Va. 1986); *In re Baldwin-United Corp.*, 57 B.R. 759, 765 (S.D.Ohio 1985).

■ The acts giving rise to the principals' alleged liability to the claimants, and to the debtor's potential liability for indemnification, arose prior to the December 1, 1982 filing of the debtor's Chapter 11 petition. The gist of the claimants' complaint seems to be that the principals entered into the settlement agreements on November 12, 1982 knowing full well that the corporation was about to file a Chapter 11 petition. If this constitutes a legally cognizable fraud claim, it must fall within the doctrine of promissory fraud, i.e., the making of a promise with no present intention of performing it. *See, e.g., Coal Resources, Inc. v. Gulf & Western Industries*, 756 F.2d 443, 446 (6th Cir.1985); *Shear v. National Rifle Ass'n. of America*, 606 F.2d 1251, 1259 n. 39 (D.C.Cir.1979). Thus, the acts giving rise to the claimants' alleged right to payment from the principals, and the principals' right to indemnification from the debtor, arose on November 12, 1982, not when the petition was filed or some later date. Since no proof of claim was

filed by or on behalf of the principals, and the plan contains no provision for indemnifying them, their claims for indemnification were discharged upon confirmation of the plan under 11 U.S.C. § 1141(d)(1)(A) [5].

The principals strenuously argue that to apply § 1141 to claims of which they were totally ignorant until 1985 would be both unfair and a violation of their Due Process rights to notice and an opportunity to be heard. We cannot agree. While the principals were not on notice that Penn and Varela might later assert claims against them, the debtor was certainly provided such notice in the footnote to the claimants' proofs of claims. Nothing would have prevented the debtor from filing claims on behalf of the directors after the bar date had run pursuant to § 501(c) and Rule 3004. *See, In re Middle Plantation of Williamsburg, Inc.*, 48 B.R. 789, 800 (E.D. Va.1985). In the alternative, the debtor could have included an indemnification provision in the plan (*c.f. In re Inforex, Inc.*, 26 B.R. 515 (Bankr.D.Mass.1983)), or sought to waive the discharge of the principals' claims pursuant to § 1141(d)(4).

Even if none of these avenues of relief were available to the principals, we cannot condone the underlying thesis of their argument. In essence, they would have the Court hold that a claim arises only at such time as the entity asserting the claim learns of its existence. Such a holding would revive the concepts of "provability" and "allowability" under the Bankruptcy Act of 1898 which the drafters of the Bankruptcy Code of 1978 specifically excluded. *In re A.H. Robins Co., Inc.*, 63 B.R. 986, 989 (Bankr.E.D.Va.1986). Furthermore, it would do violence to the combined effect of the broad definition of "claim" and the all-encompassing nature of the discharge provision of § 1141. Rather than permitting "the broadest possible relief in the bankruptcy court" as Congress intended (H.R.Rep. No. 595 at 309, U.S.Code Cong. & Admin.News 1978, p. 6266), the Court

---

**5.** "Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan—

(A) discharges the debtor from any debt that arose before the date of such confirmation ..."

would become enmired in litigation over when a claimant first learned of the existence of his claim; Chapter 11 claimants of equal stature would receive unequal payment on their claims depending solely upon whether they learned of their right to payment prepetition, postpetition or post-confirmation; and the debtor would be deprived of a complete discharge and a fresh start. This chaotic and inequitable result is precisely what Congress intended to avoid. *In re Baldwin-United Corp.*, 55 B.R. 885, 897–898 (Bankr.S.D.Ohio 1985).

The principals' Due Process claims can fare no better. Since they were on notice both as to the filing of the bankruptcy petition and the setting of the bar date for filing claims, they have received all the process they are due. *In re Penn Central Transp. Co.*, 771 F.2d 762 (3rd Cir.1985), *cert. denied,* —— U.S. ——, 106 S.Ct. 596, 88 L.Ed.2d 576 (1985). 5 *Collier on Bankruptcy* ¶ 1141.01[b] (1986).

Significantly, while the debtor's discharge relieves it of the legal obligation to indemnify the directors, nothing in the plan or the Code prohibits the reorganized company from voluntarily paying for the principals' legal expenses and any adverse judgment in the Superior Court action. By virtue of § 1141(b) and (c), upon confirmation of the plan all of the property of the estate vested in the debtor-in-possession free and clear of all claims and interests. The reorganized company may use that property as it sees fit, subject only to the requirement of "carrying out the plan" as mandated by § 1142(a). Thus the reorganized company could indemnify the principals, but only to the extent that it is also able to pay $5000 a month into the contingent fund and pay its secured creditors, which are the only outstanding obligations under the plan. Should the cost of indemnification threaten the company's ability to make the plan payment, it would either have to reduce its indemnification payments or seek creditor and court approval for a plan modification under section 1127(b).

It logically follows that the principals have not and cannot establish that the Superior Court suit will have an adverse effect on the bankruptcy estate, because any obligation to indemnify which the company voluntarily assumes would be subordinate to the required monthly payment under the plan.

Even if Hi-Lo might be adversely affected by the Superior Court suit, the evidence falls short of establishing any of the factors for issuing a preliminary injunction. As for the first factor, we agree with counsel for the claimants that a "strong or substantial likelihood of success on the merits" obviously does not refer to the debtor's ability to successfully reorganize. *In re Landmark Air Fund II*, 19 B.R. 556, 560 (Bankr.N.D.Ohio 1982). That task has already been accomplished. In the context of this proceeding, likelihood of success can only refer to the likelihood that the principals will prevail in their guest to permanently enjoin Penn and Varela from going forward with their lawsuit. While there may be unusual circumstances which would justify such extraordinary equitable relief in a post-confirmation setting, we do not find such circumstances here. Even in cases where courts have enjoined suits against third parties which threaten estate assets or the debtor's ability to reorganize, the relief has usually been of limited, rather than permanent, duration. *See, e.g., In re Monroe Well Services, Inc.*, 67 B.R. 746, 15 B.C.D. 306 (E.D.Pa.1986); *In re Otero Mills, Inc.*, 21 B.R. 777 (Bankr.D.N.M. 1982), *aff'd.*, 25 B.R. 1018 (D.N.M.1982). We discern no factual or legal basis which would entitle the principals to the permanent injunction they seek.

■ In addressing the second factor, that of irreparable harm, we must weigh:
1) the substantiality of the injury alleged;
2) the likelihood of its occurrence; and
3) the adequacy of the proof provided.

*State of Ohio v. Nuclear Regulatory Commission, et al.*, 812 F.2d 288, 290 (6th Cir. 1987). As noted above, the reorganized company has no legal obligation to indemni-

fy the principals, and may only do so to the extent that it does not impair its ability to perform its remaining obligations under the plan. Even if the principals were legally entitled to full indemnification from the company, no evidence was presented as to the realistic extent of this economic burden, or the likelihood that the company would not be able to sustain this burden. In the absence of evidence establishing harm that is "both certain and great, rather than speculative and theoretical," the principals cannot prevail on this factor. *State of Ohio v. Nuclear Regulatory Commission, et al., supra,* at 290.

Finally, we must evaluate the potential for harm to the claimants, as well as the public interest, in granting the requested relief. Denying a party the opportunity to resolve a dispute before an appropriate tribunal always involves a great potential for harm, and the principals' justification for doing so here does not outweigh the claimants' interest in going forward with their action. Furthermore, we perceive no compelling public interest which would be served by enjoining the Superior Court suit.

For the above-stated reasons, the motion for a preliminary injunction is hereby DENIED. The foregoing shall constitute this Court's findings of fact and conclusions of law as required by Rule 52 of the Federal Rules of Civil Procedure.

IT IS SO ORDERED.