131 F.3d 147
 2 Cal. Bankr. Ct. Rep. 40
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
In Re: Thomas F. MORGAN, Debtor.
Jack CORMAN, Appellant,
v.
Thomas Morgan, Appellee.
 No. 96-16352.
 United States Court of Appeals, Ninth Circuit.
 Submitted October 9, 1997**
Decided Nov. 21, 1997.
 
 Appeal from the United States District Court for the Northern District of California, No. CV 96-00527-VRW; Vaughn R. Walker, District Judge, Presiding.
 Before: GOODWIN, FLETCHER and RYMER, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Creditor Jack Corman appeals the judgment affirming the bankruptcy court's summary judgment in favor of debtor Thomas Morgan. The bankruptcy court held that Corman's fraud claim against Morgan arose prior to confirmation of Morgan's Chapter 11 Plan of Reorganization, and was thereby discharged in bankruptcy. We affirm.
 
 I.
 
 3
 Corman argues that the bankruptcy court should have applied state law to determine when his claim arose. He also argues that the bankruptcy court violated his Fifth Amendment right to due process. We review the district court's decision on an appeal from a bankruptcy court de novo. In re Claremont Acquisition Corp., 113 F.3d 1029, 1031 (9th Cir.1997).
 
 II.
 
 4
 Because the Bankruptcy Reform Act of 1978 gave expansive meaning to the term "claim" (expressly including unmatured rights to payment), "[t]he determination of when a claim arises for the purposes of bankruptcy law should be a matter of federal bankruptcy law and should not be governed by the particular state ... law giving rise to the claim." In re Jensen, 995 F.2d 925, 930 n. 5 (9th Cir.1993) (internal quotations omitted). Accordingly, the bankruptcy court did not err in deciding that federal, and not state, law controlled the issue of when Corman's claim arose, for the purpose of determining whether that claim was discharged by the confirmation of Morgan's reorganization plan.
 
 
 5
 The bankruptcy court properly based its decision on In re Jensen, which established the procedure for determining when a claim arises, given the type of claim involved and the competing policy goals, if any, between the Bankruptcy Code and the relevant substantive area of law.
 
 
 6
 The bankruptcy court correctly refused to apply the right to payment approach as outlined in Jensen. The right to payment approach in this case would have led to the conclusion that Corman's claim did not arise until he actually discovered that the note was unsecured, about 167 days after Morgan's plan was confirmed. However, Jensen clearly rejected the appropriateness of that approach in the bankruptcy setting, as not giving adequate consideration to the policies underlying the Bankruptcy Code. Id. at 928, 930.
 
 
 7
 In reaching its decision the bankruptcy court properly applied the relationship approach as outlined in Jensen. See In re Russell, 193 B.R. 568 (Bankr.S.D.Cal.1996). Here, the policy goal of fraud law, preventing the tortfeasor from benefitting from an intentional misrepresentation, conflicts with the policy goal of the Bankruptcy Code, to give the debtor a fresh start. See In re Jensen,995 F.2d at 928.
 
 
 8
 Employing the relationship approach, the bankruptcy court correctly determined that Corman's fraud claim arose when the misrepresentation was made in the course of settlement discussions held prior to confirmation, and was thus discharged. The requisite relationship could be said to have arisen either: (1) when Morgan made the alleged misrepresentation (see In re Edge, 60 B.R. 690 (Bankr.M.D.Tenn.1986)), or (2) through Corman and Morgan engaging in settlement discussions (see In re Piper Aircraft, Corp., 58 F.3d 1573 (11th Cir.1995)).
 
 
 9
 In order to serve the policy goals of fraud law, the bankruptcy court does have the power to prevent a debtor's use of bankruptcy proceedings as a shield for fraudulent conduct. In some cases this will lead the court to deny the discharge of a debt procured by fraud. However here the bankruptcy court noted that Corman could have easily discovered the nature of his security by undertaking a search of the UCC-1 financing statements, on file with the Secretary of State. The UCC-1 statements related to the liens reference the same restaurant equipment as security for each debt, which should have put Corman on notice that he might hold a subordinate security interest that could leave him effectively unsecured, and might have caused him to investigate further.
 
 
 10
 Moreover, even if Corman is correct in asserting that it is the earlier Nor Cal/Cal-State lien which left him unsecured, an initial search under the debtor NDA would have revealed enough to allow Corman to investigate this possibility, inasmuch as the NDA/ Cal-State UCC-1 statement references "the Master Equipment Lease between Nor-Cal [sic] Dining, Inc. and as assigned to Debtor herein [NDA], and Secured Party [Cal-State]."
 
 
 11
 Thus, because Corman could have discovered the alleged misrepresentation through a search of official records, the relationship approach as set forth in Jensen provides a proper balancing of conflicting policies in the law. This approach demonstrates that Corman's claim arose pre-confirmation, at the time that the alleged misrepresentation was made during settlement discussions, and thus was discharged through Morgan's bankruptcy proceedings. On these facts, the bankruptcy court never had an opportunity, prior to confirming the plan, to pass upon a challenge to a discharge based upon fraud.
 
 
 12
 Nevertheless, the bankruptcy court assumed arguendo that the fair contemplation approach was valid in the fraud context, and employed it as an alternative basis for holding that Corman's claim had been discharged. Corman contends that the use of this approach is appropriate, but ought instead to yield a finding that an issue of fact exists as whether Corman should have fairly contemplated Morgan's misrepresentation, thus precluding summary judgment in favor of Morgan. However, this argument is of no force because the fair contemplation approach is not, in any event, proper in the context of a fraud case. Whether or not the bankruptcy court would find for a claimant, this approach fails to provide adequate consideration of the policy goals relevant to a fraud case.
 
 
 13
 Finally, the bankruptcy court's finding that Corman's fraud claim was discharged pursuant to Bankruptcy Code § 1141 does not violate his Fifth Amendment right. to due process. Due process requires that the creditor be given notice regarding the bankruptcy proceeding itself. See Reliable Elec. Co. v. Olson Construction Co., 726 F.2d 620, 623 (10th Cir.1984); In re Harbor Tank Storage Co., 385 F.2d 111, 114 (3d Cir.1967).
 
 
 14
 It would require us to stretch settled law in order to accept Corman's argument that, by virtue of not knowing of his fraud claim against Morgan in time to challenge confirmation, he lacked the requisite notice which would have allowed him to protect his property interest. We decline to do so. Corman had constructive notice of his fraud claim prior to the confirmation of Morgan's reorganization plan. See, e.g., In re Hi-Lo Powered Scaffolding, Inc., 70 B.R. 606, 610-611 (Bankr.S.D.Ohio 1987).
 
 
 15
 AFFIRMED.
 
 
 
 **
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed. R.App. P. 34(a); Ninth Circuit Rule 34-4
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3